ABSEN, INC.,

        Plaintiff,

v.                                                Case No:   6:19-cv-905-Orl-40LRH

LED CAPITAL, LLC and MARCEL
DEKEYZER,

        Defendants.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT (Doc. No. 29)** |
| **FILED:** | **February 14, 2020** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

## I.    BACKGROUND.

      On May 13, 2019, Plaintiff Absen, Inc. filed this action against Defendant LED Capital, LLC ("LED Capital") and Marcel Dekeyzer ("Dekeyzer"), seeking enforcement of certain note receivable agreements; enforcement of a guaranty, enforcement of a security agreement, and foreclosure on the lien on the security agreement.  Doc. No. 1.  On May 15, 2019, Plaintiff filed an amended complaint.  Doc. No. 8.  The amended complaint included six counts:   (1)

enforcement of an August 2, 2017 note receivable ("First Note") against Defendant LED Capital (Count I); (2) enforcement of a November 9, 2017 note receivable ("Second Note") against LED Capital (Count II); (3) enforcement of a guaranty ("Guaranty") against Dekeyzer (Count III); (4) enforcement of a security agreement ("Security Agreement") against LED Capital (Count IV); (5) foreclosure of a lien on security agreement collateral against LED Capital (Count V); and (6) foreclosure of a lien on note receivable collateral against LED Capital (Count VI). *Id.*

On May 31, 2019, Plaintiff filed returns of service demonstrating that both Defendants were served with a copy of the summons and amended complaint on May 17, 2019. Doc. Nos. 11, 12. Neither Defendant responded to the amended complaint, nor have they otherwise appeared in this action. Upon Plaintiff's motion, Clerk's defaults were entered against them. Doc. No. 14. Plaintiff thereafter moved for default judgment. Doc. No. 15. With the motion, Plaintiff included an affidavit of Allen Lu, the Chief Growth Officer for Absen Inc., along with several exhibits. Doc. No. 15-2. The undersigned thereafter issued a supplemental briefing order requiring Plaintiff to provide additional information regarding the factual bases for the damages requested, both regarding the amount of principal and the amount of default interest requested by the motion for default judgment. Doc. No. 16. The undersigned also ordered Plaintiff to submit a supplemental memorandum regarding the amount of attorneys' fees and costs incurred in this matter. *Id.* at 3.

Upon review of Plaintiff's motion and supplemental response, the undersigned determined that there was still insufficient information for the Court to enter default in Plaintiff's favor. Doc. No. 18. Specifically, (1) Plaintiff had not sufficiently explained why New Jersey law would not govern the issue of whether Plaintiff perfected its security interest in the First and Second Notes;[1]

---

[1] The UCC Financing Statements at issue in this case were recorded with the State of New Jersey, Department of the Treasury. Doc. Nos. 8-3, 8-6. According to Plaintiff, Defendants are also located in New Jersey; LED Capital is a New Jersey limited liability company, and Dekeyzer is domiciled in and a

(2) in Counts V and VI of the amended complaint, Plaintiff sought foreclosure on certain collateral that appeared to be located in New Jersey, without providing legal authority for this Court's authority to authorize a foreclosure sale on collateral located in a different jurisdiction; (3) even if foreclosure were proper, Plaintiff had not sufficiently identified the collateral at issue; and (4) the documentation regarding attorney's fees and costs remained insufficient. *Id.*

Plaintiff thereafter attempted to voluntarily dismiss Counts V and VI of the amended complaint pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). Doc. No. 23. That document was stricken. *See* Doc. No. 25 ("Rule 41(a)(1), according to its plain text, permits voluntary dismissals only of entire 'actions,' not claims." (quoting *Perry v. Schumacher Grp. of La.*, 891 F. 3d 954, 956 (11th Cir. 2018))).

Upon clarification from the Court, Plaintiff then filed an amended complaint. Doc. Nos. 26, 27, 28. The amended complaint contains four counts: enforcement of the First Note against LED Capital (Count I); enforcement of the Second Note against LED Capital (Count II); enforcement of the Guaranty against Dekeyzer (Count III); and enforcement of the Security Agreement against LED Capital (Count IV). Doc. No. 28.

On February 14, 2020, Plaintiff filed a renewed motion for default judgment. Doc. No. 29. In the motion, Plaintiff explains that by amending its complaint and removing Counts V and VI, it is no longer seeking foreclosure on the subject collateral. *Id.* at 2. Plaintiff further asserts that it will no longer seek attorney's fees and costs in this matter. *Id.* With the motion, Plaintiff has included:

- An Affidavit in Compliance with the Servicemembers Civil Relief Act (Doc No. 29-1);

---

citizen of New Jersey. Doc. No. 8 ¶¶ 4–5.

- An Affidavit of Allen Lu in Support of Plaintiff's Motion for Default Judgment and related exhibits (Doc. No. 29-2);

- A Second Affidavit of Allen Lu Regarding Damages (Doc. No. 29-3); and

- An Affidavit of Lingrong Zhang Regarding Damages (Doc. No. 29-4).

The renewed motion for default judgment was referred to the undersigned, and the matter is ripe for review.

## II.     ALLEGATIONS OF THE SECOND AMENDED COMPLAINT.[2]

Plaintiff is the owner and holder of two note receivable agreements, a security agreement, and a guaranty at issue in this case.  Doc. No. 28 ¶ 3.  On August 3, 2017, LED Capital, LLC, through Dekeyzer, executed the First Note in favor of Plaintiff in the amount of $3,746,810.00. Doc. No. 28 ¶ 10; Doc. No. 28-1.  In connection with the First Note, LED Capital executed a Security Agreement.  Doc. No. 28 ¶ 11; Doc. No. 28-2.  The Security Agreement grants Plaintiff a continuing first priority security interest in certain collateral, as defined in the Security Agreement, as security for payment of any debts, liabilities, or obligations LED Capital may owe to Plaintiff. Doc. No. 28 ¶ 12; Doc. No. 28-1, at 5 ¶ 5; Doc. No. 28-2, at 3 ¶ 2.  Specifically, the Security Agreement defines "Collateral" to include:

(A) 1,800 Absen M2.9 mobile LED tiles and 448 Absen X3v mobile LED tiles with control system and accessories packed in flight cases (the "Equipment") together with all replacements therefore, additions and accessions thereto, and proceeds, whether now owned or thereafter acquired (including, but without limitation, insurance proceeds) and products thereof, including without limitation, all Accounts; Chattel Paper; Commercial Tort Claims; Documents; General Intangibles; Instruments; Intellectual Property Rights; Investment Property; Payment Intangibles; Supporting Obligations arising from or related to the Equipment.

(B) The Membership Interests.

---

[2] With the second amended complaint, Plaintiff has included copies of the Notes, Security Agreement, and Guaranty.  "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).

Doc. No. 28-2, at 3 ¶ 2. "Membership Interests" are defined as:

> [T]he present and future membership interests . . . [in] the Company, all of the warrants, options or other rights for the purchase or acquisition from the Company of membership interests . . . [in] the Company, all of the securities convertible into or exchangeable for membership interests . . . [in] the Company or warrants, rights or options for the purchase or acquisition from the Company of such membership interests . . . [in] and all of the other ownership or profit interests in the Company . . . whether voting or nonvoting, and whether or not such membership interests, warrants, options, rights or other interests are outstanding on any date of determination, in each such case including all voting rights and economic rights related thereto.

*Id.* ¶ 1. Plaintiff perfected the Security Agreement by filing UCC filing statements, which were recorded in the State of New Jersey in August 2017. Doc. No. 28 ¶ 13; Doc. No. 28-3.

As further security for the First Note, Dekeyzer executed the Guaranty. Doc. No. 28 ¶ 14; Doc. No. 28-4. Pursuant to the Guaranty, Dekeyzer "absolutely and unconditionally guarantees to [Plaintiff] the due, regular and punctual payment and prompt performance" of the obligations attendant to the First Note, including "the payment of all amounts owing under the Agreement and all Default Costs and Indemnified Losses in connection therewith." Doc. No. 28-4, at 1.

On November 9, 2017, LED Capital, through Dekeyzer, executed the Second Note in favor of Plaintiff in the amount of $2,905,000.00. Doc. No. 28 ¶ 15; Doc. No. 28-5. The Second Note grants Plaintiff a continuing lien in the collateral, as defined in the Second Note, as security for payment and performance of certain obligations, as defined in the Second Note. Doc. No. 28 ¶ 16; Doc. No. 28-5; *see also* Doc. No. 28-5, at 13 (Exhibit B to Second Note - Equipment List identifying specific collateral). Plaintiff perfected the Second Note by filing a UCC financing statement in the State of New Jersey, which was recorded on November 13, 2017. Doc. No. 28 ¶ 17; Doc. No. 28-6.

Both Notes attached a schedule of payments that LED Capital would make to Plaintiff on specified dates. Doc. No. 28 ¶ 19; Doc. No. 28-1, at 11; Doc. No. 28-5, at 11. Beginning in

September 2018, LED Capital failed to make the scheduled payments in full when due under the terms of the respective Notes.   Doc. No. 28 ¶ 20.   On January 17, 2019, Plaintiff made a written demand on LED Capital to pay the outstanding amounts due.   Doc. No. 28 ¶ 21; Doc. No. 28-7. LED Capital failed to comply with the demands set forth in the demand letter.   Doc. No. 28 ¶ 22. On February 14, 2019, Plaintiff made a second written demand on LED Capital to pay the amounts outstanding on the Notes.   *Id.* ¶ 23; Doc. No. 28-8.   LED Capital again failed to comply with that demand.   Doc. No. 28 ¶ 24.   According to the terms of the Notes, on February 20, 2019, at Plaintiff's option, the full amount of principal on each of the Notes became immediately due and payable.   *Id.* ¶ 26.   As of May 13, 2019, Plaintiff alleges that LED Capital owed the following amounts on the First Note:

- $2,470,168.27 in principal;

- $22,221.21 in default interest;

- Total: $2,492,389.48.

*Id.* ¶ 27; *see* Doc. No. 28-9 (May 13, 2019 Notice of Default).   As of May 13, 2019, Plaintiff alleges that LED Capital owed the following amounts on the Second Note:

- $2,700,850.73 in principal;

- $73,498.82 in default interest;

- Total: $2,774,349.55

Doc. No. 28 ¶ 28; *see* Doc. No. 28-9 (May 13, 2019 Notice of Default).

## III.   STANDARD OF REVIEW.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").[3]  Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether plaintiff is entitled to" a default judgment.  *Fid. & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

The Supreme Court has explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  This analysis applies equally to motions for default judgment.  *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009) (citations omitted).

If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment.  *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008).   Unlike well-pleaded allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages to be awarded.  *Id*. (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)).   Therefore, in the

---

[3]  The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages). Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See Adolph Coors*, 777 F.2d at 1543–44. However, no hearing is necessary "when the district court already has a wealth of evidence . . . such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("[A] hearing is not necessary if sufficient evidence is submitted to support the request for damages.").

## IV.  ANALYSIS.

### A.  Subject Matter Jurisdiction.

The parties are completely diverse, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Doc. 28 ¶¶ 2, 4–5, 7, 10, 15. Therefore, the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

### B.  Personal Jurisdiction.

"[I]t is well-established under Florida law, that if certain requirements are met, parties may, by contract alone, confer personal jurisdiction on the courts of Florida." *Upofloor Americas, Inc. v. S Squared Sustainable Surfaces, LLC*, Case No. 6:16-cv-179-Orl-37DCI, 2016 WL 5933422, at *6 (M.D. Fla. Oct. 12, 2016) (internal quotations omitted) (citing *Jetbroadband WV, LLC v. Mastec N. Am., Inc.*, 13 So. 3d 159, 162 (Fla. 3d Dist. Ct. App. 2009)).

To confer jurisdiction on the courts of Florida, an agreement must:

> (1) include a choice of law provision designating Florida Law as the governing law, (2) include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida, (3) involve consideration of not less than $ 250,000, (4) not violate the United States Constitution, and (5) either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under its laws. Thus, as long as one of the parties is a resident of Florida or incorporated under its laws, and the other statutory requirements are met, sections 685.101–.102 operate irrespective of whether the underlying contract bears any relation to Florida and notwithstanding any law to the contrary.

*Jetbroadband*, 13 So. 3d at 162 (citing Fla. Stat. §§ 685.101, 685.102).

In this case, each of the requirements set forth above have been met. First, the agreements at issue each contain a choice-of-law provision that designate Florida law as the governing law. Doc. Nos. 28-1, at 8 (First Note); 28-2, at 10 (Security Agreement); 28-4, at 4 (Guaranty); 28-5, at 6 (Second Note). Second, the agreements at issue each contain provisions wherein Defendants agree to submit to the jurisdiction of Florida courts. *Id.* Third, the First and Second Notes involve consideration that exceeds $250,000.00. *See* Doc. Nos. 28-1, 28-5. Fourth, there is nothing in the record to suggest that the agreements at issue violate the United States Constitution. Fifth, Plaintiff is authorized to and does conduct business in Florida. Doc. No. 28 ¶ 2; *see Jetbroadband*, 13 So. 3d at 162 (maintaining a place of business in Florida can satisfy the final statutory requirement). Thus, since the agreements at issue satisfy the requirements of §§ 685.101 and 685.102, the Court has personal jurisdiction over Defendants.

C. Clerk's Default.

On May 17, 2019, Dekeyzer was personally served with a copy of the summons and the amended complaint. Doc. No. 11. On the same day, LED Capital was served by personally serving its registered agent, Dekeyzer, with a copy of the summons and the amended complaint. Doc. No. 12. Accordingly, service of process was proper. *See* Fed. R. Civ. P. 4(e)(2)(A); Fla.

Stat. § 48.031(1)(a). Defendants have not timely responded to Plaintiff's complaints or otherwise appeared in this case. Accordingly, the Clerk of Court properly entered default against Defendants.[4]

    D.    <u>Liability</u>.

        *1.    Counts I & II: Enforcement of the First and Second Notes Against LED Capital.*

Under Florida law, an action for breach of a promissory note is akin to a breach of contract action. *Wane v. Loan Corp.*, 926 F. Supp. 2d 1312, 1324 (M.D. Fla. 2013). The elements of a breach of contract action in Florida are: "(1) a valid contract; (2) a material breach; and (3) damages." *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th Dist. Ct. App. 2000). A plaintiff must also establish that it is the owner of the note and that it possesses the original note. *Dasma Invs., LLC v. Realty Assocs. Fund III, L.P.*, 459 F. Supp. 2d 1294, 1302 (S.D. Fla. 2006).

By its default, LED Capital admits that it executed the First and Second Notes, copies of which are attached to the amended complaint. Doc. No. 28 ¶¶ 10, 15; Doc. No. 28-1; Doc. No. 28-5. Both documents were signed by Dekeyzer in his capacity as the sole member of LED Capital. Doc. No. 28 ¶ 4; Doc. No. 28-1, at 10; Doc. No. 28-5, at 10. LED Capital admits that Plaintiff presently owns, holds, and possesses the First and Second Notes. Doc. No. 28 ¶¶ 3, 34, 43. LED Capital further admits that it failed to make any payments to Plaintiff in September 2018 and thereafter, which constitute defaults under the terms of the First and Second Notes. Doc. No. 28 ¶¶

---

[4] Because Defendants were in default, and the second amended complaint did not assert new claims against Defendants, Plaintiff was not required to serve a copy of the second amended complaint on Defendants. *See* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.").

20, 35, 44.  It also admits that as of May 13, 2019, it owed Plaintiff the following amounts as a result of its breach of the First and Second Notes:

First Note:

- $2,470,168.27 in principal;

- $22,221.21 in default interest;

- Total: $2,492,389.48.

Second Note:

- $2,700,850.73 in principal;

- $73,498.82 in default interest;

- Total: $2,774,349.55

Doc. No. 28 ¶¶ 27, 28.[5]

These admissions are sufficient to establish breach of the First and Second Notes by LED Capital as alleged in Counts I and II of the second amended complaint.

### 2. *Count III: Enforcement of the Guaranty Against Dekeyzer.*

"A breach of guaranty claim is akin to a breach of contract claim under which the guarantor is alleged to have breached its promise by failing to pay the debt of another on the default of the person primarily liable for payment."  *Ecp Station I LLC v. Chandy*, No. 8:15-cv-2523-T-JSS, 2016 WL 3883028, at *3 (M.D. Fla. June 29, 2016) (citing *New Holland, Inc. v. Trunk*, 579 So. 2d 215, 217 (Fla. 5th Dist. Ct. App. 1991); *Swan Landing Dev., LLC v. Fla. Capital Bank, N.A.*, 19 So. 3d

---

[5] As discussed more fully *infra*, in the motion for default judgment and accompanying evidentiary support, Plaintiff explains that additional default interest has accrued.  Doc. No. 29, at 19.  Plaintiff also explains that after default and acceleration of the notes, LED Capital made six payments to Plaintiff, totaling $310,000.00.  Doc. No. 29, at 9; Doc. No. 29-4 ¶ 8.  No other payments have been received by Plaintiff to date.  Doc. No. 29-4 ¶ 10.  Plaintiff allocated these payments to first reduce the amount of default interest owed.  Doc. No. 29, at 21; Doc. No. 29-4 ¶ 11.  Accordingly, the amount of damages sought in the second amended complaint varies from the amount sought by Plaintiff in its renewed request for default judgment.

1068, 1072 (Fla. 2d Dist. Ct. App. 2009)).  Thus, again Plaintiff must establish the following elements: "(1) a valid contract; (2) a material breach; and (3) damages."  *Abbott Labs., Inc.*, 765 So. 2d at 740.

By failing to respond to the second amended complaint, Dekeyzer admits that he executed and delivered the Guaranty, a copy of which is attached to the second amended complaint.  Doc. No. 28 ¶¶ 14, 51; Doc. No. 28-4.  Dekeyzer admits that pursuant to the Guaranty, he promised to answer for LED Capital's debt upon default under the First Note.  Doc. No. 28 ¶ 52; *see* Doc. No. 28-4, at 2 ("absolutely and unconditionally guarantee[ing] to [Plaintiff] the due, regular, and punctual payment and prompt performance of all of the Obligations, including, but not limited to, the payment of all amounts owing under the Agreement and all Default Costs and Indemnified Losses in connection therewith.").  Pursuant to the definition of "Indemnified Losses" under the First Note, Dekeyzer admits that, as part of the Guaranty, he agreed to pay "all damages, dues, penalties, fines, costs, amounts paid in settlement, taxes, losses, expenses, and fees, including court costs and Attorneys' Fees and expenses incurred" in the event of default.  *See* Doc. No. 28-1, at 3. Dekeyzer admits that LED Capital has defaulted pursuant to the terms of the First Note.    Doc. No. 28 ¶ 53.  Finally, Dekeyzer admits that he has defaulted under the Guaranty by failing to answer for LED Capital's indebtedness to Plaintiff under the First Note.  *Id.* ¶ 56.

These admissions are sufficient to establish that Dekeyzer is liable for breach of the Guaranty, as alleged in Count III of the second amended complaint.  Accordingly, Dekeyzer is also responsible for the damages incurred by Plaintiff in relation to the First Note.  *See* Doc. No. 28-4.

3.      *Count IV: Enforcement of the Security Agreement Against LED Capital.*

Under Florida law, "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a

security interest in collateral." Fla. Stat. § 679.3011(1). "[A] registered organization organized under the law of a state is located in that state." *Id.* § 679.3071(5). An individual debtor is "located" in the state of their principal place of residence. *Id.* § 679.3071(2)(a). LED Capital is a New Jersey limited liability company and Dekeyzer resides in and is a citizen of New Jersey. Doc. No. 28 ¶¶ 4–5. Therefore, New Jersey law governs perfection of Plaintiff's security interest in the subject collateral.

Pursuant to New Jersey law, a security interest is enforceable against the debtor if value has been given; the debtor has rights in the collateral; and the debtor has authenticated a security agreement that provides a description of the collateral. N.J. Stat. § 12A:9-203(b). A party perfects its security interest in personal property by filing a UCC-1 financing statement. N.J. Stat. § 12A:9-310(a) ("Except as otherwise provided . . . a financing statement must be filed to perfect all security interests . . . ."). As it relates to identifying collateral, "a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." N.J. Stat. § 12A:9-108(a).

As discussed above, the second amended complaint alleges that Plaintiff presently owns, holds, and possesses the First and Second Notes and the Security Agreement. Doc. No. 28 ¶¶ 34, 43, 64. In connection with First Note, LED Capital executed the Security Agreement, which grants Plaintiff a continuing first priority security interest in certain collateral. Doc. No. 28 ¶¶ 11–12; Doc. No. 28-2. Plaintiff perfected the Security Agreement by filing UCC filing statements in New Jersey. Doc. No. 28 ¶ 13; Doc. No. 28-3. The Second Note also grants Plaintiff a continuing lien in the specified collateral. Doc. No. 28 ¶ 16; Doc. No. 28-5. Plaintiff perfected the Second Note by filing a UCC financing statement in New Jersey. Doc. No. 28 ¶ 17; Doc. No. 28-6. The second

amended complaint also alleges that LED Capital breached the First and Second Notes by failing to make monthly payments.  Doc. No. 28 ¶¶ 20, 35, 44, 65.

Based on the foregoing, it appears that Plaintiff can state a claim for enforcement of the Security Agreement.  Nonetheless, from the second amended complaint and the renewed motion for default judgment, it is entirely unclear what relief Plaintiff seeks as it relates to Count IV.  Doc. Nos. 28, 29.  For example, in the second amended complaint, Plaintiff "seeks complete enforcement of all terms and obligations of the Security Agreement and all relief to which it is entitled as a matter of law and equity."  Doc. No. 28 ¶ 68.  Plaintiff further seeks "entry of an order directing Defendant LED Capital to surrender to Absen all property subject to the Security Agreement. . . ."  *Id.* at 9.  However, as discussed above, by amending its complaint, Plaintiff no longer seeks to foreclose on the subject collateral, *see* Doc. No. 29, at 2.  Moreover, nowhere in the motion for default judgment does Plaintiff address its request for LED Capital to surrender such property, provide authority in support, or otherwise explain to the Court what relief it seeks as it relates to Count IV.  Further complicating matters is that the only mention of the relief Plaintiff seeks with respect to Count IV can be found in two cursory sentences in its motion, that the Court, "recogniz[e] [Plaintiff's] perfected security interest in the collateral identified in the two UCC financing statements" and "find that [Plaintiff] has a perfected security interest in all of the collateral identified in the UCC Financing Statements."  Doc. No. 29, at 2, 23.

Accordingly, to the extent that Plaintiff seeks to have LED Capital "surrender" the subject collateral, I find that Plaintiff has abandoned this request by its failure to address such requested relief in its motion for default judgment.  In addition, insofar as the motion for default judgment can be read as asking the Court to grant declaratory relief by "recognizing" its security interest in the subject collateral or "finding" that it has perfected its security interest, in the second amended

complaint Plaintiff does not seek declaratory relief as it relates to Count IV. *See* Doc. No. 28, at 8–9. Therefore, I recommend that the Court decline to consider such a request for declaratory relief. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

Based on the foregoing, and because Plaintiff has not adequately explained the relief it seeks as it relates to Count IV of the complaint, I recommend that the Court decline to enter default judgment on Count IV. *Cf. Transp. All. Bank, Inc. v. Sky Limits Inc.*, No. 6:19-cv-53-Orl-31GJK, 2019 WL 2719314, at *4 (M.D. Fla. May 29, 2019) (recommending denial of default judgment seeking foreclosure of collateral subject to security agreement "due to a lack of support and clarity," noting that "the Court cannot leave this case open indefinitely awaiting Plaintiff's more specific request for relief"), *report and recommendation adopted*, 2019 WL 2717200 (M.D. Fla. June 28, 2019).

E. <u>Monetary Damages (Counts I–III).</u>

Pursuant to the terms of the First and Second Notes, due to LED Capital's default, Plaintiff is entitled to the outstanding principle, as well as "a variable per annum [default] rate of interest equal to the lesser of" twelve percent per annum or the maximum allowed by applicable law. Doc. No. 28-1, at 2, 4–5; Doc. No. 28-5, at 2–3.[6] As to the First Note, Dekeyzer unconditionally guaranteed to Plaintiff "the due, regular and punctual payment and prompt performance of . . . the payment of all amounts owing under the Agreement and all Default Costs and Indemnified Losses in connection therewith." Doc. No. 28-4, at 1.

---

[6] Under Florida law, the maximum amount of permissible interest is eighteen percent per annum simple interest. Fla. Stat. § 687.02. Accordingly, the twelve-percent rate per annum is permissible here.

In support of the renewed motion for default judgment, Plaintiff submits the affidavit of Allen Lu ("Lu"), who is currently the OEM Director for Plaintiff. Doc. No. 29-3 ¶ 1. In his affidavit, Lu has provided a detailed calculation of the amount of principal outstanding on each of the subject notes with an accounting of the amounts paid (or not paid) by LED Capital:

| August 3, 2017 Note | | | |
|---|---|---|---|
| Principal Owed | | Principal Paid | |
| Date | Amount | Date | Amount |
| Aug-17 | $300,000.00 | 8/15/2017 | $260,000.00 |
| Jan-18 | $95,148.00 | 9/15/2017 | $40,000.00 |
| Feb-18 | $94,753.00 | 6/13/2018 | $573,752.68 |
| Mar-18 | $275,207.00 | 7/25/2018 | $50,000.00 |
| Apr-18 | $93,057.00 | 8/13/2018 | $140,000.00 |
| May-18 | $92,661.00 | 8/14/2018 | $187,889.05 |
| Jun-18 | $92,265.00 | 3/7/2019 | $25,000.00 |
| Jul-18 | $91,870.00 | | |
| Aug-18 | $91,474.00 | | |
| Sep-18 | $91,078.00 | | |
| Oct-18 | $90,682.00 | | |
| Nov-18 | $90,287.00 | | |
| Dec-18 | $270,741.00 | | |
| Jan-19 | $88,591.00 | | |
| Feb-19 | $88,195.00 | | |
| Mar-19 | $87,799.00 | | |
| Apr-19 | $87,404.00 | | |
| May-19 | $267,858.00 | | |
| Jun-19 | $85,708.00 | | |
| Jul-19 | $85,312.00 | | |
| Aug-19 | $84,916.00 | | |
| Sep-19 | $84,521.00 | | |
| Oct-19 | $84,125.00 | | |
| Nov-19 | $83,729.00 | | |
| Dec-19 | $264,183.00 | | |
| Jan-20 | $82,033.00 | | |
| Feb-20 | $81,638.00 | | |
| Mar-20 | $262,092.00 | | |
| Apr-20 | $79,942.00 | | |
| May-20 | $79,546.00 | | |
| **TOTALS** | **$3,746,815.00** | | **$1,276,641.73** |

**TOTAL AMOUNT OWED $2,470,173.27**[7]

| November 9, 2017 Note | | | |
|---|---|---|---|
| Principal Owed | | Principal Paid | |
| Date | Amount | Date | Amount |
| Apr-18 | $25,000.00 | 7/10/2018 | $25,000.00 |
| May-18 | $25,000.00 | 7/26/2018 | $20,000.00 |
| Jun-18 | $25,000.00 | 8/14/2018 | $37,149.27 |
| Jul-18 | $25,000.00 | 10/29/2018 | $42,000.00 |
| Aug-18 | $25,000.00 | 1/23/2019 | $50,000.00 |
| Sep-18 | $25,000.00 | 2/21/2019 | $30,000.00 |
| Oct-18 | $25,000.00 | | |
| Nov-18 | $35,000.00 | | |
| Dec-18 | $35,000.00 | | |
| Jan-19 | $75,000.00 | | |
| Feb-19 | $75,000.00 | | |
| Mar-19 | $75,000.00 | | |
| Apr-19 | $75,000.00 | | |
| May-19 | $75,000.00 | | |
| Jun-19 | $95,000.00 | | |
| Jul-19 | $95,000.00 | | |
| Aug-19 | $95,000.00 | | |
| Sep-19 | $95,000.00 | | |
| Oct-19 | $95,000.00 | | |
| Nov-19 | $95,000.00 | | |
| Dec-19 | $100,000.00 | | |
| Jan-20 | $100,000.00 | | |
| Feb-20 | $100,000.00 | | |
| Mar-20 | $100,000.00 | | |
| Apr-20 | $100,000.00 | | |
| May-20 | $100,000.00 | | |
| Jun-20 | $100,000.00 | | |
| Jul-20 | $100,000.00 | | |
| Aug-20 | $105,000.00 | | |

---

[7] Lu explains that there is a $5.00 discrepancy between his calculations and the face of the note:

There is a $5 discrepancy between the principal listed on the face of the August 3, 2017 Note ($3,746,810.00) and the principal calculated by adding up all amounts listed on the payment schedule ($3,746,815.00). Thus, the "Total Principal Outstanding" for the August 3, 2017 Note ($2,470,173.27) is $5 greater than the outstanding principal that Absen seeks to recover in this lawsuit ($2,470,168.27). The $5 discrepancy was a rounding error. But in an abundance of caution, the extra $5 was excluded.

Doc. No. 29-3 ¶ 7.

| | | | |
|---|---|---|---|
| Sep-20 | $105,000.00 | | |
| Oct-20 | $105,000.00 | | |
| Nov-20 | $105,000.00 | | |
| Dec-20 | $105,000.00 | | |
| Jan-21 | $105,000.00 | | |
| Feb-21 | $105,000.00 | | |
| Mar-21 | $105,000.00 | | |
| Apr-21 | $75,000.00 | | |
| **TOTALS** | **$2,905,000.00** | | **$204,149.27** |

**TOTAL AMOUNT OWED $2,700,850.73**

Doc. No. 29-3, at 3–4.[8]  Lu also avers regarding the amount of default interest owed, explaining that "default interest is not compounded in the calculations, even though compound interest may be permitted."  *Id.* ¶ 9.  Instead, Plaintiff calculated simple interest at a "Daily Interest Rate," which is the default interest rate of twelve percent per annum expressed per day, which is calculated by dividing 0.12 by 365, and expressing the result as a percentage after rounding down.  *Id.* ¶ 13.

Because Lu's affidavit only addresses default interest through December 6, 2019, however, Plaintiff also submits the affidavit of Lingrong Zhang ("Zhang"), who is the Treasury Manager at Shenzhen Absen Optoelectronic Co. Ltd., the parent company of Plaintiff.  Doc. No. 29-4 ¶ 2.  Zhang presents the following charts to demonstrate the outstanding default owed on the amounts of principal due and owing as of February 7, 2020—the date the renewed motion for default judgment was due:

---

[8] Plaintiff explains that although late charges of five percent of the scheduled payments were permitted, Plaintiff does not seek to add such charges to the late payments made by LED Capital.  Doc. No. 29, at 16.

**August 3, 2017 Note**

|  | Feb. 2019 | Mar. 2019 | Apr. 2019 | May-19 | Jun-19 | Jul-19 | Aug. 2019 |
|---|---|---|---|---|---|---|---|
| Daily Interest Rate | 0.032876% | 0.032876% | 0.032876% | 0.032876% | 0.032876% | 0.032876% | 0.032876% |
| Days | 9 | 31 | 30 | 31 | 30 | 31 | 31 |
| Monthly Interest | $7,308.83 | $25,174.87 | $24,362.78 | $25,174.87 | $24,362.78 | $25,174.87 | $25,174.87 |

|  | Sept. 2019 | Oct. 2019 | Nov. 2019 | Dec. 2019 | Jan. 2020 | Feb. 2020 |
|---|---|---|---|---|---|---|
| Daily Interest Rate | 0.032876% | 0.032876% | 0.032876% | 0.032876% | 0.032876% | 0.032876% |
| Days | 30 | 31 | 30 | 31 | 31 | 7 |
| Monthly Interest | $24,362.78 | $25,174.87 | $24,362.78 | $25,174.87 | $25,174.87 | $5,684.65 |

| Principal Outstanding | $2,470,168.27 |
|---|---|
| Total Default Interest | $286,668.69 |

**November 9, 2017 Note**

|  | Feb. 2019 | Mar. 2019 | Apr. 2019 | May-19 | Jun-19 | Jul-19 | Aug. 2019 |
|---|---|---|---|---|---|---|---|
| Daily Interest Rate | 0.032876% | 0.032876% | 0.032876% | 0.032876% | 0.032876% | 0.032876% | 0.032876% |
| Days | 9 | 31 | 30 | 31 | 30 | 31 | 31 |
| Monthly Interest | $7,991.39 | $27,525.88 | $26,637.95 | $27,525.88 | $26,637.95 | $27,525.88 | $27,525.88 |

|  | Sept. 2019 | Oct. 2019 | Nov. 2019 | Dec. 2019 | Jan. 2020 | Feb. 2020 |
|---|---|---|---|---|---|---|
| Daily Interest Rate | 0.032876% | 0.032876% | 0.032876% | 0.032876% | 0.032876% | 0.032876% |
| Days | 30 | 31 | 30 | 31 | 31 | 7 |
| Monthly Interest | $26,637.95 | $27,525.88 | $26,637.95 | $27,525.88 | $27,525.88 | $6,215.52 |

| Prinicipal Outstanding | $2,700,850.73 |
|---|---|
| Total Default Interest | $313,439.87 |

Doc. No. 29-4 ¶ 6. Zhang also calculated the twelve-percent daily interest rate "by dividing 12% expressed as a decimal by 365 and then expressing the result as a percentage after rounding down (0.032876%)." *Id.* ¶ 8. Zhang then multiplied the "Principal Outstanding" by the "Daily Interest Rate" by the number of days for each month, resulting in the "Monthly Interest" figures identified above.

Zhang further avers that after default and acceleration of the Notes, LED Capital made six payments to Plaintiff: (1) $45,000 on May 9, 2019; (2) $90,000 on August 1, 2019; (3) $10,000 on

August 2, 2019; (4) $50,000 on September 20, 2019; (5) $75,000 on October 31, 2019; and (6) $40,000 on December 4, 2019. *Id.* ¶ 10; *see also* Doc. No. 29-3 ¶ 18 (Lu's affidavit providing same). Those payments totaled $310,000, and Plaintiff has received no further payments. Doc. No. 29-4 ¶ 10; Doc. No. 29-3 ¶ 18. Plaintiff allocated these payments to first reduce the amount of default interest owed. This resulted in the amount of interest on the First Note being reduced to zero, and the amount of default interest on the Second Note being reduced to $290,108.56. Doc. No. 29-4 ¶ 11. Accordingly, Zhang summarizes Plaintiff's damages as of February 7, 2020, as follows:

**August 3, 2017 Note (First Note)**:

- $2,470,168.27 in outstanding principal; and

- $0 in default interest.

**November 9, 2017 Note (Second Note)**:

- $2,700,850.73 in outstanding principal; and

- $290,108.56 in default interest.

**Total damages**: $5,461,127.56.

Doc. No. 29-4 ¶¶ 12–13.

Based on these averments, and in the absence of objection or a response from Defendants, I recommend that the Court find that Plaintiff has established a total amount of damages on the First Note and Second Note of $5,461,127.56, for which LED Capital is liable, with interest accruing at twelve percent per annum. *See Solis v. J.W. Buckholz Traffic Eng'g, Inc.*, No. 3:11-cv-248-J-34MCR, 2012 WL 6761600, at *3 (M.D. Fla. Dec. 6, 2012) (citations omitted) ("As Plaintiff has established the amount of its damages through an affidavit . . . the Court is able to establish the amount of the default judgment without the necessity for an evidentiary hearing."), *report and*

*recommendation adopted*, 2013 WL 45677 (M.D. Fla. Jan. 3, 2013). I further recommend that, pursuant to the terms of the Guaranty, Dekeyzer also be held jointly and severally liable with LED Capital on the First Note, in the amount of $2,470,168.27, with interest accruing at twelve percent per annum.

E. <u>Correction of Plaintiff's Name</u>.

Plaintiff requests that its name be corrected upon entry of default judgment, naming it as "Absen Inc." rather than "Absen, Inc." and removing the extraneous comma. Doc. No. 29, at 22. In his affidavit, Lu avers that Plaintiff's correct entity name is "Absen Inc." and not "Absen, Inc." which appears in the style of this case. Doc. No. 29-2 ¶ 19. I recommend that the Court grant this requested relief. *See, e.g.*, *Textron Fin. Corp. v. RV Having Fun Yet, Inc.*, No. 3:09-cv-2-J-34TEM, 2011 WL 3320327, at *2 (M.D. Fla. Aug. 2, 2011) (correcting scrivener's error in entering default judgment against "RV Having Fun Yet Inc." even though complaint listed "RV Having Fun Yet, Inc." as defendant).

## V.     RECOMMENDATION.

For the reasons set forth herein, I **RESPECTFULLY RECOMMEND** that the Court **GRANT in part and DENY in part** Plaintiff's Renewed Motion for Default Judgment (Doc. No. 29) as follows:

1.  **ENTER** default judgment against LED Capital and in favor of Plaintiff "Absen Inc." on Counts I and II of the second amended complaint in the amount of $5,461,127.56, with interest accruing at twelve percent per annum, as it relates to the First and Second Notes;

2.  **ENTER** default judgment against Dekeyzer, jointly and severally with LED Capital, and in favor of Plaintiff "Absen Inc." on Count III of the second amended complaint

in the amount of $2,470,168.27, with interest accruing at twelve percent per annum, as it relates to the First Note;

3. **DENY** the motion in all other respects; and

4. **DIRECT** the Clerk of Court to issue a Judgment consistent with the Court's ruling on this Report and Recommendation, and thereafter, to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on March 19, 2020.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party